Good morning your honors, Tom Schlesinger for Mouhamed Dafer. I will request two minutes in rebuttal. May it please the court. The district court erred in denying the writtenness case. At the time of his plea, Mr. Dafer did not comprehend the consequences of the conviction for false statement, a crime of moral turpitude, which made him subject to deportation under the immigration statute. The affirmative misadvice meant that Mr. Dafer was deprived of making an informed decision. Let me ask you this though, just to jump right to it, then if that were the case, how do you explain, is it, is it Dafer? Is that how you said it? I'm taking sort of a French. Okay, we'll all follow your lead. How do you explain his statement in the amended plea agreement that he understands a conviction in this case may subject him to deportation? Well, I consider that actually to be part of the, what we call the contemporaneous evidence in this case, which would indicate that Mr. Dafer did not understand what he was looking at, looking at the determination that he would be subject to deportation at some point along the way, because the language in the plea agreement was equivocal. It said may. He may be subject to deportation, but in fact, if you read the statute, the particular statute under Title VIII, it indicates that a crime of moral turpitude will subject one to deportation or removal, the same way another statute under Title VIII indicates that an aggravated felony will subject one to removal or deportation. But, but counsel, there's no, I mean, I don't, I can't think of any other way to put it in a plea agreement. I mean, this is true for criminal cases as well. For, for the judge to say, or for the plea agreement to say, you will be subject to deportation, would be to have the court essentially assume the duties and determination of a body, which is not the court, because the court doesn't do the deportation. It's no different than when we take a plea on someone, we have to advise them of what the maximum term of imprisonment is. We say you may be subject to a term of imprisonment of up to X years. We don't say you will get X years term of imprisonment, because at that point, you can't make that determination. So I don't know how else you could put it. Well, I think if you say you will, then you are basically referring back to the statute, which says that you will be subject to deportation. If it doesn't always happen. Deportation is the worst thing that can happen to you in that situation. I mean, that's the ultimate. You're getting kicked out. So he was advised that the ultimate could happen. And, you know, and I think like Judge Ezra said, you know, I mean, people can have, there can be a lot of reasons that they may want to adjust their status or things along those lines. It's, it's, and also too, I've seen cases come up to the Ninth Circuit that I've dissented on, and I don't think there's any legal basis that someone gave them relief, but they got it. So you're, it's, but if you say this, you know, this could put you in that situation. Why doesn't that cover it? Well, I think part of the reason it doesn't cover it, Your Honors, is the fact that the judge was not a counsel for Mr. DeFere. It was Cornell Price. And according to the declarations of Mr. DeFere and his uncle, Mr. Price indicated that he would not have to worry about deportation. So the case law that has interpreted the import and the, the relevant importance of a court statement or what anything that a prosecutor might say on the record at the time of a plea colloquy or the acceptance of a plea agreement is, is, is of no moment if you have a situation where the attorney for the defendant is telling the defendant, look, don't worry about it. The judge is saying you're going to be deported, but in fact, you're not going to be deported. So don't worry about it. And let me ask you this, though. If, if this case were remanded to determine whether Mr. DeFere was misadvised, is Mr. DeFere limited to the evidence that's in the record, or could he seek to present additional evidence? It depends on this, how the court would fashion its remedy. If it were to vacate the conviction and remand for further proceedings, it appears to me that the court's general practice is to allow the lower court to proceed on an open record and to consider whatever evidence it wishes to consider. Unless the district court in this case never really reached the first prong of Strickland, which is to make a counsel affirmatively misadvised Mr. DeFere as he claims, right? So the district court on remand could hold an evidentiary hearing in order to make that determination. The court could do that. We didn't ask for the evidentiary hearing in the briefing because we feel confident that the conviction should be vacated on the basis of the record. The fact of the matter is, is that there was affirmative misadvice in this case. If you were to accept the fact that what the district court appears to do here is to say, look, I don't need to decide the first prong because I'm jumping directly to the second prong and I'm saying that it's highly unlikely that Mr. DeFere would have gone to trial in this case. He wasn't going to get a better plea agreement for the government and he wasn't going to go to trial because under the law, it would be highly unlikely for him to do so. That's what I was getting at, because the district court at the time it made its ruling really didn't have the benefit of the Lee decision. And so the district court then jumped immediately to prejudice, saying he couldn't have gotten a better deal. The evidence was overwhelming, which the Supreme Court has now said is not the correct analysis. Well, I'm not blaming the district court. And we're not, certainly not faulting the district court for that, but why shouldn't this be a situation where we just simply remand for the district court to have the benefit of Lee and to reach the first prong of the Strickland analysis if it thinks that's appropriate? Well, we certainly wouldn't quarrel with that decision if that's where the court wanted to go. But we feel that the evidence is clear and uncontroverted based upon not only Mr. DeFere's declaration, which the government says, well, that's post hoc, but the fact that there was also the uncle's declaration to back it up, which indicates that at the time of the plea discussions, which were work product between the counsel of record and the client, the counsel was saying... If I understand you correctly, you're just saying, well, I think I should win first outright here. But if I don't win outright, I'll take a Lee remand. Absolutely. Am I summarizing that? I think that's true. I would agree with that. As a former chief judge of the Ninth Circuit used to say, you're looking for a home run, but you'll take a double. That's right. I just care about my batting average here, Your Honor. And however many bases I can get, I'll take. Do you want to reserve the balance and see what the other side has to say? Yes, actually, if it's okay, Your Honor, I'll just take 20 more seconds to go through the rest of what I wanted to present just initially, which is the two Ninth Circuit cases, your cases. There was no evidence taken from counsel. There's a suggestion that you've got to get the prior counsel's statement in order to be able to decide the case. And that doesn't appear to be the case. The contemporaneous evidence includes the repeated questioning that DeFere had of his counsel about deportation and the fact that he had a wife and children from the United States and an extended family here. And finally, that removal was as dire to him as any prison sentence that he might pursue. And therefore, he would have sought that Hail Mary that the lead opinion talks about in this case and gone to trial in order to avoid separation from his family, to return to a country he has had no contacts with for a long time. Thank you, Your Honor. Thank you. Good morning. Good morning. May it please the court. My name is Julia Cho on behalf of the United States. This is not just jump right to it and say you concede that the district court's finding of no prejudice is contrary to late, right? That is respectfully not the position of the government. The position of the government is that the district court correctly did apply what was forthcoming in Lee in the sense that the district court did evaluate the two questions. Would the defendant otherwise have gone to trial or would the defendant otherwise have received a better plea bargain? The district that's now no longer valid under Lee. How do you distinguish the district court's prejudice analysis in this case from the Lee case? The prejudice analysis in the Lee case focused on a number of factors that are not present here. First, the Lee court in the Supreme Court decided that in only in unusual circumstances, in the circumstances where there was contemporaneous evidence that deportation and avoiding deportation was the determinative factor in that defendant's decision to plead guilty. That evidence case in this case, that's what the defendant is claiming. That's what avoiding deportation is also the determinative factor. So what I see from the district court's analysis, because, of course, at that time, the district court didn't have the benefit of Lee. Therefore, the district court focused on whether the result would have been different. And that's the wrong inquiry. So the district court talked about the strength of the government's case, talked about the fact that in light of that evidence, he wouldn't have been able to secure a more favorable plea. But now Lee says that's not the question. The question really is, but for this misadvisement, he wouldn't have entered a plea of guilty at all. So when I look at the defendant's declaration in this case, he affirmatively said that was my primary consideration. And because I had a green card, I was told by Mr. Price that pleading guilty to this crime will not have any immigration consequences because it was not a deportable crime. So I don't see the distinction between what he's claiming here and the Lee situation. Yes, I think Your Honor presents two points, so I'll adjust them in order. First, the question of whether the district court's analysis was correct. I believe that the district court's analysis and the framework that the district court was using was actually correct. The district court was evaluating whether the defendant otherwise would have gone to trial. It is true that the district court did evaluate the available defenses at trial. But in the way the district court formulates its order, that factor is only a part in deciding whether. He really changed the lens and really changed the paradigm, because I have to say, before I looked at Lee, I looked at this and said, hey, he's got a mountain of evidence against him. There's no way he was going to win. And that, you know, that's how you usually how you usually look at prejudice. But in this, but Lee said that's not the right way to look at it. And last time I checked, I'm not on the U.S. Supreme Court, so I have to look at it differently. And it's a different lens. And then I think there's also, I wonder, can you distinguish, there's a case in our recent unpublished decisions, United States v. Chan, that it seems that that goes against you, too. So first, I think that Lee, it may have changed the lens and it may have reiterated the fact that a district court can't look at whether a person would have been successful at trial. And that is not what the district court did. But what Lee also did is that it emphatically emphasized that you cannot reverse a district court based on post hoc assertions from a defendant. So if you go through the factors of what Lee looked to. What if the district court finds that Mr. Defer's declaration is credible? The district court in its in its decision, it could do that at a at a further adventure. Because it didn't have the benefit of Lee. That's correct. But in this scenario, similar to this one with the benefit of Lee, if the district court had found Mr. Defer's declaration to be credible, then how would you distinguish Lee? I think in this case, the district court did not find the declaration to be sufficient. I think the district court saw that the declaration did say that he otherwise may have risked going to trial. Did the district court say that? The district court did not. The district court did not specifically say that. But the district court did find in its prejudice analysis that it wasn't likely the defendant would have gone to trial or otherwise would have received a plea bargain. That's in contradiction to what the defendant's declaration said. So I think by implication, the district court didn't think that what the declaration submitted said was sufficient. Do you dispute the fact that the district court skipped the first prompt? I think the district court did skip the first prong. I think the district court did not think it was. So the answer to that is you do not dispute that. The district court resolved this on the second prompt. Correct. So if we don't agree with you, then it has to go back for a remand. Or do you have some authority that supports us determining in the first instance whether Mr. Defer's counsel misadvised him? I think that this court does have before it facts to establish that the first prong of Strickland is not established. I don't want to be too difficult on you, but when you say I think, when I ask you, do you have, it's OK, what's your best? It's not what you think. It's what's out there. And tell me how that fits in. Yes, Your Honor. So there isn't contemporary evidence that in this case, the defendant's counsel affirmatively misled him. What the court has before it are the two declarations, one from defendant himself. OK. If you have any authority to say that we can make that first prong determination in the first instance, what's your best authority for that? Your Honor, I don't think there is, because Lee didn't even address the first prong of Strickland. We can't, because that's a factual finding that the district court has to make in the first instance. The district court didn't make that factual finding. It assumed that the prejudice, it assumed that the first prong of Strickland had been met for purposes of moving on to the prejudice analysis. So if you're saying we can rely on the evidence that's before this court, then what we have essentially are uncontroverted declarations from Mr. DeFore and his, I think it was his uncle, that says there was an affirmative misadvisement. I don't think you want us to do that. Well, I think that the district court didn't say, assuming that it had been met, moving on to the next one. Yes, it is. The district court says. Assuming defendant satisfies the deficient performance prong, he does not meet Strickland's second prong. This is page five of the district court's order. Yes, Your Honor. I think in that, in that sense, the district court didn't make a finding in the sense that the district court thought that the declarations were credible. Well, when you assume it, that prong is satisfied or you don't move on to the second prong. So we don't mind read things. We go by what the language is. And she just read assuming and then go to the, you don't get to the second prong if the first prong isn't satisfied, right? That's correct. So the district court assumed for purposes to get to the second prong. So what Judge Wynn is saying is if you want us to decide it here, the only evidence in the first prong is against you. That's correct. If Lee requires a remand, which I know you're not conceding now, but if Lee does, then it goes back. And I don't know whether I asked co-counsel, if we did, I mean, counsel for appellant, if we did remand this because we feel the district court has to make a determination at the first prong, is Mr. Defer limited to the evidence that's in the record or could he seek to present additional evidence? Could the government present additional evidence at that hearing? I believe that this court would be able to order a fuller evidentiary hearing if this court desired to do so. But I also think that the petitioner did have the obligation, the burden to present a case of ineffective assistance of counsel in the first instance. He didn't do so. And he's not seeking a further evidentiary hearing in his briefs. He's really only seeking it in the alternative if the defendant thinks that he is going to lose on this issue. Well, you know, counsel, you say that Lee changed the lens. It actually changed the whole camera. And the district court did everything the district court was supposed to do under both Supreme Court and Ninth Circuit precedent at the time and made a perfectly adequate ruling. But then the law changed. And the law changed in a way that you are forced in response to because you don't have the answers, understandably, because you can't put yourself in the head of the of the district judge to opine or surmise or suggest or think what the district court would do. So I think the only way to find that out is if this if this panel finds that the Lee decision is is controlling here would be to give the district court the opportunity to look at it and make that decision as a factual matter. Yes, I see that my time is up. I'll continue to answer this question briefly. I do think that we did, as your honor has said, change the lens on the camera. But I also think that the facts in this case do not hold up to the standard that the Supreme Court said in the sense that the facts in this case rest on post hoc assertions that the Supreme Court specifically said were not sufficient. Let me ask you this, just as I asked, I think the homerun and the double if we rule against you and say that Lee changed it and do you want us in the first instance to consider the only uncontested affidavit here and fine for the appellant on prong one? No, your honor. Would you like a remand as would you like the double if we disagree? The government would also accept a double. Okay, thank you. Thank you, your honors. I'm not sure there's really that much more for me to say. Sometimes, and I can't predict what this panel will do, but the questions for oral argument or for advocates is always do you snatch defeat from the jaws of victory or do you continue on your course? And I don't know, I don't know what the answer is because we haven't conferenced on this. So make your call. I understand very cautiously. Then what I'm going to say is, is that had deferred known of the clear prospect of deportation, there was a reasonable problem, reasonable probability, which is a standard here that the decisions in this case would have been different. The decisions would have been either to try to obtain a better plea agreement and in the absence of that avenue to go to trial. He's indicated that in his declaration, it's been corroborated now by the declaration of his uncle. The uncle is not chopped liver. He is a second witness. He corroborates what Mr. DeFere himself has said. So this is not simply a post hoc assertion type case. And therefore, we would respectfully ask that the conviction be vacated or in the alternative, if the court wishes, to return the case to the district court for the district court to make a determination on prong number one. Because prong number one, the district court was neutral on in the way the minute order reads. But it appears that the evidence is still uncontroverted and therefore, it may not be necessary to do that. But I would anticipate that the district court would find that prong one was met and then underlie prong two as well. I'm sure that the district court would be happy how both of you have read his or her mind. But we'll go from there. Your time is up. Thank you very much. Thank you. This matter will stand submitted.
judges: Callahan, Nguyen, Ezra